MARY F. PHINNEY, in equity, *vs.* SARAH E. PHINNEY, and another.

Penobscot. Opinion April 15, 1889.

*Equity. Contract. Constitution. Obligation. Impairment.* Stat. 1887, *c.* 129.

The obligation of contracts, which is protected from impairment by the state and federal constitutions, does not arise wholly from the acts and stipulations of the parties, independent of existing law.

This obligation has vitality and subsists outside the stipulations expressed by parties in their contracts.

The laws which exist, at the time and place of making the contract, enter into and form a part of it, as if they were expressly referred to or incorporated into it.

While a state may, to a certain extent and within proper bounds, regulate the remedy, yet if by subsequent enactment it so changes the nature and extent of existing remedies as materially to impair the rights and interests of a party in a contract, this is as much a violation of the compact as if it absolutely destroyed his rights and interests.

The constitutional prohibition secures from attack not merely the contract itself, but all the essential incidents which render it valuable and enable its owner to enforce it.

Chapter 129 of the public laws of 1887 held to be unconstitutional, so far as it applies to mortgages in existence, prior to its enactment.

ON REPORT. Bill in equity, heard on bill, demurrer and joinder.

This was a bill in equity by a creditor, who sought to realize a judgment out of the debtor's equity of redemption in a mortgage, given to secure the performance of a collateral agreement or undertaking, other than the payment of money.

The bill is founded on the provisions of c. 129 of the acts of 1887. The material portions of the act are stated in the opinion.

The essential parts of the bill are as follows:

Mary F. Phinney, of Augusta, in the county of Kennebec, and state of Maine, complains against Sarah E. Phinney and Nancy Parsons, both of Plymouth, in the county of Penobscot, and state of Maine, and says, that said Sarah E. Phinney is debtor to your complainant in and by virtue of a judgment, rendered November 25th, A. D. 1885, by the consideration of our justices of the supreme judicial court holden at Bangor within and for the said county of Penobscot on the first Tuesday of October, A. D. 1885, for the sum of three hundred and seventy-seven and 4-100 dollars, damages and twenty-four and 73-100 dollars, costs of suit, recovered by your complainant against said Sarah E. Phinney, which judgment is still unreversed, not annulled and in no part satisfied, and your complainant says that said Sarah E. Phinney is at the date hereof, debtor to her in the amount of said judgment for said damages and costs of suit with legal interest thereon, from the said date of said rendition of judgment.

That said Nancy Parsons and one Sally Parsons, by their deed of quitclaim dated August 5th, A. D. 1875, recorded in Penobscot registry of deeds, vol. 455, p. 352, conveyed to said Sarah E.

Phinney all their right, title and interest in and to the following real estate situate in said Plymouth : (description of premises.)

That said Sarah E. Phinney by her deed of mortgage, dated August 5, A. D. 1875, recorded in Penobscot registry of deeds, vol. 458, p. 289, mortgaged said real estate, (description of premises) to said Nancy and Sally Parsons to secure the performance of the agreement of said Sarah E. Phinney to maintain the said Sally and Nancy during their lives, and the survivor during her life, in a comfortable manner according to their station in life, both in sickness and in health, and shall pay their funeral charges, the same being a collateral agreement or undertaking other than the payment of money.

That said Sally Parsons is dead, and said Nancy Parsons, as the survivor of said mortgagees has commenced proceedings to foreclose said mortgage for alleged breach of the conditions thereof, by a notice of foreclosure, signed by said Nancy Parsons, bearing date July 28, A. D. 1884, published in the Bangor Weekly Commercial, a public newspaper printed in Bangor, Penobscot county, Maine, vol. 44, Nos. 32, 33 and 34, dated Aug. 8, 15 and 22, 1884, and recorded in Penobscot registry of. deeds, September 16, A. D. 1884, in Book H, p. 265.

That the time of redemption of said mortgage has not expired.

That your complainant has the claim aforesaid, the judgment hereinbefore described, against the said Sarah E. Phinney, said mortgagor.

That your complainant, by and upon a certain writ, dated July 18, A. D. 1887, returnable to the supreme judicial court next to be holden at said Bangor within and for said county of Penobscot, on the first Tuesday of October, A. D. 1887, wherein said Sarah E. Phinney was summoned to answer unto your complainant in a plea of debt setting forth in the declaration therein the above described judgment, did attach said mortgagor's interest in said estate on said claim, to the amount of eight hundred dollars, July 18, A. D. 1887, and did on said July 18th, cause said attachment to be duly recorded in the registry of deeds for said county of Penobscot.

That Nancy Parsons is the owner of such mortgage and resides at Plymouth in said county of Penobscot.

That the aforesaid mortgaged property is situated in said Plymouth in said county of Penobscot.

That said agreement has to be performed in the said county of Penobscot.

Your complainant prays as follows:

1. That said court may examine into the facts and ascertain whether there has been any breach of the conditions of said mortgage, and if such is found to be the fact to assess the damages arising therefrom, and to make such orders and decrees in the premises as will secure the rights of said mortgagee, so far as the same can be reasonably accomplished and enable your complainant, by fulfilling such requirements as the court may impose, to hold said property, or such right or interest as may remain therein by virtue of such attachment, for the satisfaction of her claim.

2. That said mortgagee may be decreed to have possession of such property for such time as the court deems just and equitable.

3. That pending these proceedings the right of redemption shall not expire by any attempted foreclosure of such mortgage.

4. That for the purposes aforesaid, all necessary or proper accounts may be taken, inquiries made and decision given.

5. That the complainant may have such further or other relief as the nature of the case may require.

6. That said respondents may upon oath make full, true and perfect answer to all and singular the matters hereinbefore stated, as fully and particularly as if the same were hereinafter repeated and they were distinctly interrogated in relation thereto.

And may it please the court to grant to your complainant a writ of subpœna directed to Sarah E. Phinney of Plymouth, county of Penobscot and state of Maine, and to Nancy Parsons of said Plymouth, in the form provided by law and the rules of this court.

Dated this 20th day of July, A. D. 1887.

MARY F. PHINNEY.

H. M. HEATH,
*Complainant's Solicitor.*

The bill, duly sworn to, was filed July 30, 1887.

Defendants filed a demurrer as follows:

The demurrer of Nancy Parsons and Sarah E. Phinney, who say, the plaintiff is not entitled to the relief prayed for:

Because, she has, as is shown by her bill, a plain and adequate remedy at law.

Because, the plaintiff shows by her said bill, that she recovered judgment against the defendant, Sarah E. Phinney, on the first Tuesday of October, A. D. 1885, and does not show, nor allege that she sued out execution on said judgment, nor that she has attempted in any manner to enforce said judgment against the goods and estate of said Sarah, nor that said Sarah has not sufficient goods and estate to satisfy said judgment, that may be reached by ordinary process of law, without recourse to the intervention of this court sitting in equity.

Because, the plaintiff does not show in her said bill that she has exhausted her remedies at law.

Because, the plaintiff has not by her said bill shown such a case as entitles her to any such relief as is thereby prayed, or any other relief whatsoever against these defendants.

Wherefore, these defendants demand the judgment of this honorable court, whether they shall be compelled to make any further or other answer to the said bill, and pray to be hence dismissed with their reasonable costs.

NANCY PARSONS,
SARAH E. PHINNEY.

*H. M. Heath*, for plaintiff.

Statute in question, applies clearly to mortgages in force at date of its becoming a law.

The process is in the nature of a bill in equity to redeem brought by attaching creditor.

It leaves the contract between the mortgagor and mortgagee untouched, and only affects the remedy.

Legislature has power to alter remedy, if contract is unimpaired. *Oriental Bank* v. *Freeze*, 18 Maine, 109.

Until judgment in some action, the mortgagee has no vested right in any particular remedy or method of foreclosure. *Bangor* v. *Goding*, 35 Maine, 73.

Right to foreclose is statutory. What is given by statute may be changed by statute. *Bank* v. *Freeze, supra.*

If mortgagee has any cause of complaint, it is because during

pendency of this bill in equity the time of redemption is indirectly extended.

Courts of equity have always possessed power to extend time of redemption. *Bank* v. *Eldredge*, 28 Conn. 566. (73 Am. Dec. 688). *Jones* v. *Crittenden*, 1 Car. Law Rep. 385. (6 Am. Dec. 536).

The books abound in instances where this power has been sustained, in cases of claims existing at passage of statutes. (Statute enlarging time to bring actions of ejectment against adverse holders). *Billings* v. *Hall*, 7 Cal. 1; *Cox* v. *Berry*, 13 Geo. 306; (Statute extending time to bring actions upon sealed instruments). *Dyer* v. *Gill*, 32 Ark. 410; (Statute relative to actions to foreclose mechanic's liens). *Edwards* v. *McCaddon*, 20 Iowa, 520; (Statute providing for limitation of actions to enforce judgments, although there was no limitation when the judgment was rendered). *People* v. *Circuit Judge*, 37 Mich. 287. (Statute extending time of redemption from tax sales). *Dikeman* v. *Dikeman*, 11 Paige, 484. (Statute granting chancery powers to relieve against forfeitures and penalties already incurred). *Potter* v. *Sturdivant*, 4 Maine, 154. (Statute repealed, without saving clause, law giving lien. Held to apply to an action pending to enforce lien although attachment had been made). *Bangor* v. *Goding*, 35 Maine, 73. (Statute changing requirements to constitute liens, applied to pending action). *Frost* v. *Ilsley*, 54 Maine, 351.

As to the essential principles involved, *Berry* v. *Clary*, 77 Maine, 482, would seem to be decisive of case at bar.

The contract between the mortgagor and mortgagee is undisturbed and unimpaired. The mortgagee can take and hold possession of the premises, enjoy the rents and profits, bring her action at law for damages for breach of the contract for support, prosecute the various methods of foreclosure, and in fact enjoy all her legal and equitable rights and remedies, the only effect of the bill in equity being that we instead of the mortgagor shall be allowed to redeem, and that until decree the equity of redemption shall not be allowed to expire.

Sections 60, 61 of c. 82, R. S., are analogous provisions where mortgages secure money.

This court could have exercised the powers of the statute under its broad chancery powers.

The bill is drawn under the statute and contains all the elements of the statute. The remedy being statutory, nothing more is required than the statutory averments.

As to the causes of demurrer :

To entitle the plaintiff to relief under the statute in question, it is not necessary to aver or show that we have no adequate remedy at law. The remedy given is concurrent.

The second cause is irrelevant. Under the statute it is not necessary to show or allege that we sued out execution on said judgment. The remedy is given to any person having a claim against the mortgagor ; a judgment is a claim. It is equally immaterial that the plaintiff has not attempted in any manner to enforce said judgment against the goods and estate of said Sarah ; the statute requires no such step. For the same reason, it is equally immaterial that the plaintiff does not allege that said Sarah has not sufficient goods and estate to satisfy said judgment, that may be reached by ordinary process of law, without recourse to the intervention of this court sitting in equity. In the absence of the statute such objections would have great weight.

The third cause is immaterial, because the remedy given by the statute is concurrent and additional to the remedies at law.

The fourth is of no weight, if the statute applies to claims and mortgages in force at the time the statute in question went into effect.

The general statute excepting pending actions does not apply. Our claim was a judgment debt, when the act became a law. Counsel also cited the following cases, in support of the principle that a general statute, permitting defendants in actions to foreclose mortgages to have six months to file answers, and requiring six months' notice, before sale on decree, was held valid even as to pending actions, although under former practice defendant had but twenty days. *Von Baumbach* v. *Bade*, 9 Wis. 559. (76 Am. Dec. 283). *Holloway* v. *Sherman*, 12 Iowa, 282. (79 Am. Dec. 537).

*S. S. Hackett,* for defendants.

The question is whether the statute applies to this mortgage dated August 5, 1875, the act being approved March 16, 1887. In *Bryant* v. *Merrill,* 55 Maine, 515, DICKERSON, J., says, "A retroactive effect will not be given to a statute, unless it clearly shows that such was the intention of the legislature." *Hastings* v. *Lane,* 15 Maine, 134; *Given* v. *Marr,* 27 Id. 212; *Ellis* v. *Smith,* 38 Id. 114; *Curtis* v. *Hobart,* 41 Id. 230; *Rogers* v. *Greenbush,* 58 Id. 395; *Whitman* v. *Hapgood,* 10 Mass. 438; *Bank* v. *Copeland,* 7 Allen, 139. In *Whitman* v. *Hapgood, supra,* Jackson, J., says that retrospective effect is not to be given to a statute "especially if it tends to produce inconvenience or injustice." This statute tends to that effect. By the law, in force when this mortgage was given, it became foreclosed in three years, after breach, etc. This statute provides that any person, having a claim against the mortgagor, may intervene without performing, or offering to perform, and indefinitely postpone the foreclosure. The equity suit must await the determination of the creditor's suit at law against the mortgagor, whether it takes one year or ten. In ten days after the bill was filed, and twenty-seven days before defendants could appear to answer, this mortgagee would have had an indefeasible title.

It was formerly doubted whether these mortgages were subject to redemption. But this court held in *Bryant* v. *Erskine,* 55 Maine, 153, and *Fales* v. *Hemmenway,* 64 Id. 373, that they were. In the former case, it was held, that the services to be performed were personal, and could not be assigned to a stranger; and a demurrer to the bill was sustained, because it did not allege that the transfer was made with the consent of the mortgagee. Hence, when this mortgage was made, a creditor could acquire no interest in the premises, even by a levy; and the statute changes the contract to the prejudice of the mortgagee, by permitting new parties to come in without his consent.

Statute, unconstitutional, if retroactive.

Plaintiff must, first, exhaust legal remedies. There must be a levy, a return of *nulla bona.* *Webster* v. *Clark,* 25 Maine, 313; *Baxter* v. *Moses,* 77 Id. 465.

But the chief objection is, that statute allows the creditor, to come in and make a new contract,—to come in where the parties had contracted—for the law is part of the contract. *Walker* v. *Whitehead*, 16 Wall. 314; *Memphis* v. *United States*, 97 U. S. 293.

Case not like *Berry* v. *Keller*, 77 Maine, 270, and *K. &. P. R. R. Co.* v. *P. & K. R. R. Co.*, 59 Id. 9. In the latter, KENT, J., says that the decision rests upon the vital fact that our statutes had provided no method of foreclosure; and he supposed the legislature can not, constitutionally shorten the time of foreclosure.

Where the statute is direct and governs the case the equity court is bound by it. *Kemp* v. *Pryor*, 7 Ves. 249; *Bronson* v. *Kinzie*, 1 How. 311.

If there has not been a breach of the mortgage, then there is no provision in the act, that the court shall make any decree. There are no sufficient allegations in the bill to authorize a decree, outside the statute. *Webster* v. *Clark*, and *Baxter* v. *Moses*, *supra*.

FOSTER, J. The object of this bill is to enable an attaching creditor of the mortgagor, pending proceedings for foreclosure, to step in, postpone the time for the expiration of the right of redemption, and enable him to fulfill the requirements devolving on the mortgagee, agreeably to c. 129, Laws of 1887.

This statute provides that in all cases where a debtor has mortgaged real estate to secure the performance of a collateral agreement other than the payment of money, and proceedings have been commenced to foreclose the mortgage and the time of redemption has not expired, a creditor of the mortgagor having attached the mortgagor's interest may file a bill in equity, and the court is thereupon authorized to ascertain whether there has been a breach of the conditions of the mortgage; and if such is found to be the fact, to pass any order or decree, and thereby enable the creditor, by fulfilling such requirements as the court may impose, to hold the property or such right as may be acquired by virtue of such attachment, for the satisfaction of his claim. And it is therein provided that "pending such proceedings, the

right of redemption shall not expire by any attempted foreclosure of such mortgage."

The mortgage in question was given long prior to this enactment, and was to secure performance of an agreement of the mortgagor to maintain the mortgagees, and the survivor of them, during their natural lives in a comfortable manner according to their station in life, and at their decease to pay their funeral charges.

Proceedings for the foreclosure of this mortgage had been commenced, and the time for redemption had nearly expired when this bill was brought.

The defense interposed by demurrer and pressed upon our consideration, is, that the statute, if retrospective and therefore operative upon this mortgage, is unconstitutional and consequently void so far as this mortgage is in question; that it is in contravention of that provision of the Constitution of the United States which prohibits a state from passing any law impairing the obligation of contracts.

That it was intended to act retrospectively and apply to mortgages existing at the date of its enactment, as well as to such as should thereafter be made, there can be no question.

The contract under consideration falls within the provisions of this act, and the question to be determined is whether the statute in respect to this contract is valid, or whether the legislature in enacting it transcended its power.

The Constitution of the United States (Art. 1, § 10) declares that no state shall pass any law which "impairs the obligation of contracts." If the act in question, so far as it relates to contracts existing at the date of its passage, is within the inhibition of the Constitution it is, to that extent, inoperative and void. It is insisted that this mortgage, having been given long prior to the act, must be governed by the law then existing both as to its redemption and foreclosure, and that the law in relation to it then in force became a part and parcel of the contract, and so annexed to it that any extension of the time of foreclosure or redemption would impair the obligation guaranteed by the constitution.

It is now well settled that contracts do not derive their obligation solely from the acts and stipulations of the parties independent of existing law. This obligation has vitality and subsists outside of the stipulations expressed by parties in their contracts. And, in accordance with this principle, the highest courts in this country have in very many cases laid down the doctrine, that the laws which subsist at the time and place of the making of the contract, and where it is to be performed, enter into and form a part of it as if they were expressly referred to or incorporated in its terms, embracing not only those laws which affect its validity, construction and discharge, but also those in relation to its enforcement. *Von Hoffman* v. *City of Quincy*, 4 Wall. 550. "The obligation of a contract includes everything within its obligatory scope. Among these elements nothing is more important than the means of enforcement. This is the breath of its vital existence." *Edwards* v. *Kearzey*, 96 U. S. 600. At the time when this contract was made, the statute law of the state provided specific modes by which the mortgagee of real estate might foreclose his mortgage, after breach of the condition on the part of the mortgagor, and it specifically defined the time in which the mortgagor might redeem the estate after commencement of proceedings under the statute to foreclose the equity. That time, where no express agreement for a shorter period had been inserted in the contract, was a fixed and definite term of three years. At the expiration of that term, if there had been no redemption, the estate would vest in the mortgagee and he would thereby become invested with an indefeasible title. The rights of the mortgagor and mortgagee were well and clearly defined, and existed by positive law. There was no indefinite equity of redemption, created by courts of equity and enforceable in those courts, as in many of the states, (*Kennebec & Portland R. R. Co.* v. *Portland & Kennebec R. R. Co.*, 59 Maine, 25, 30) but the right of equity and the right of foreclosure were creatures of the statute. The rights of the mortgagee were no less valuable to him than were those of the mortgagor. If existing and secured to him, from the nature of the contract and the laws in force at the time of its execution, those rights were as inviolable as were those of the mortgagor.

Does the legislative act, upon which this bill is founded, so affect the rights of the mortgagee that the obligation of his contract is impaired, and thus entitle him to protection at the hands of the court?

While it is not intended to disturb the proper application of the principle, that a state to a certain extent and within proper bounds may regulate the remedy, yet if by subsequent enactment it so changes the nature and extent of existing remedies as materially to impair the rights and interests of a party in a contract, this is as much a violation of the compact as if it absolutely destroyed his rights and interests. The constitutional prohibition secures from attack not merely the contract itself, but all the essential incidents which render it valuable and enable its owner to enforce it.

Thus it was said in the case of the *Planter's Bank* v. *Sharp*, 6 How. 301: "One of the tests that a contract has been impaired is, that its value has by legislation been diminished. It is not by the constitution to be impaired at all. This is not a question of degree or manner or cause, but of encroaching in any respect on its obligation,—dispensing with any part of its force." The doctrine is also there asserted that if, in professing to alter the remedy only, the rights of a contract itself are changed or impaired it comes within the spirit of the constitutional prohibition, and when the remedy is entirely taken away, or clogged "by condition of any kind, the right of the owner may indeed subsist and be acknowledged, but it is impaired." "And the test, as before suggested," remark the court, "is not the extent of the violation of the contract, but the fact that in truth its obligation is lessened, in however small a particular, and not merely altering or regulating the remedy alone."

In *Louisiana* v. *New Orleans*, 102 U. S. 206, Mr. Justice Fields in the course of the opinion says: "The obligation of a contract, in the constitutional sense, is the means provided by law by which it can be enforced,—by which the parties can be obliged to perform it. Whatever legislation lessens the efficacy of those means impairs the obligation. If it tend to postpone or retard the enforcement of the contract, the obligation of the latter is to that extent weakened." See also *Green* v. *Biddle*, 8 Wheat. 84.

The result arrived at in all the decisions, bearing upon this question, seems to be that the legislature may alter or vary existing remedies, provided that in so doing, their nature and extent is not so changed as materially to impair the rights and interests of parties to existing contracts.

This rule, while somewhat vague and unsatisfactory, is the most certain general one of which the nature of the subject admits. The difficulty arises in its application to particular cases, and distinguishing between what are legitimate changes of remedy and those which impair the obligation of contract. Every case must be determined, in a great degree, by its own circumstances.

In a leading case upon this point in the United States court, *Bronson* v. *Kinzie*, 1 How. 311, the distinction between legislation affecting the remedy only, and that which transcends the constitutional limit, is carefully given. In that case, as in this, the legislation pertained to the extension of time for the redemption of mortgages. A mortgage was executed in Illinois containing a power of sale under a decree of foreclosure. Subsequently, an act of the legislature was passed giving the mortgagor twelve months, and any judgment creditor of the mortgagor fifteen months, within which to redeem the mortgaged property from a judicial sale; and prohibiting its sale for less than two-thirds of its appraised value. The court held the act void as applied to mortgages executed prior to its passage. It was contended in argument in support of the act, as in the case now before us, that it affected only the remedy of the mortgagee, and did not impair the contract. But the court replied that there was no substantial difference between a retrospective law declaring a particular contract to be abrogated and void, and one which took away all remedy to enforce it, or encumbered the remedy with conditions that rendered it useless or impracticable to pursue it. The language of Chief Justice Taney, who delivered the opinion of the court, in reference to that statute has an appropriate bearing upon the case before us, and therefore we can not forbear quoting it: "This brings us to examine the statutes of Illinois which have given rise to this controversy. As concerns the law of February 19, 1841, it appears to the court not to act merely on

the remedy, but directly upon the contract itself, and to engraft upon it new conditions injurious and unjust to the mortgagee. It declares that, although the mortgaged premises should be sold under the decree of the court of chancery, yet that the equitable estate of the mortgagor shall not be extinguished, but shall continue for twelve months after the sale; and it moreover gives a new and like estate, which before had no existence, to the judgment creditor, to continue for fifteen months. If such rights may be added to the original contract by subsequent legislation, it would be difficult to say at what point they must stop. An equitable interest in the premises may, in like manner, be conferred upon others; and the right to redeem may be so prolonged, as to deprive the mortgagee of the benefit of his security, by rendering the property unsaleable for anything like its value. The law gives to the mortgagor, and to the judgment creditor, an equitable estate in the premises which neither of them would have been entitled to under the original contract; and these new interests are directly and materially in conflict with those which the mortgagee acquired when the mortgage was made. Any such modification of a contract by subsequent legislation, against the consent of one of the parties, unquestionably impairs its obligations, and is prohibited by the constitution."

This decision has since been repeatedly affirmed.

The case of *McCracken* v. *Hayward*, 2 How. 611, arose the following year under the same statute law of Illinois, and the same question was involved as in *Bronson* v. *Kinzie*, *supra*, except that it arose upon the sale of real estate upon execution. The court arrived at the same conclusion as in the former case.

The same is true in the case of *Gantley's Lessee* v. *Ewing*, 3 How. 716, which arose under a similar statute in Indiana, and the court there held that the legislature could not, by such a law, impair or defeat the obligation under the disguise of regulating the remedy.

The question was again before the court in *Howard* v. *Bugbee*, 24 How. 461, upon a statute of Alabama allowing a judgment creditor of a mortgagor to redeem the land within two years after a sale under a decree of foreclosure of the mortgage, and the

decision of the court, in accordance with the foregoing principles of the cases cited, was, that the statute was unconstitutional as impairing the obligation of the contract of mortgages, as to all such mortgages as were in existence when the statute was enacted.

In various forms and numerous cases the principle has come before the courts, but the doctrine established by the decisions, to which we have referred, has been firmly adhered to by the supreme court of the United States, and the courts of last resort in most of the states. Additional authorities might be cited indicating the judicial sentiment and opinion upon this question. *Malony* v. *Fortune*, 14 Iowa, 417, and *Cargill* v. *Power*, 1 Mich. 369, where an extension of time for the redemption of a pre-existing mortgage was held unconstitutional; *Blair* v. *Williams*, 4 Litt. (Ky.) 34, a law extending the time of a replevin bond beyond that in existence when the contract was made, held unconstitutional; *Gunn* v. *Barry*, 15 Wall. 610, and *Edwards* v. *Kearzey*, 96 U. S. 595, where it was so held in relation to statutes exempting from sale on execution any substantial part of the debtor's property not so exempt at the time the debt was contracted; *Brine* v. *Ins. Co.*, 96 U. S. 627, 637, laws in existence in regard to real estate, when a contract is made in relation thereto, including the contract of mortgage, enter into and become a part of such contract. See also *Ex parte Christy*, 3 How. 328; *Clark* v. *Reyburn*, 8 Wall. 322; *Walker* v. *Whitehead*, 16 Wall. 317, 318; *Kring* v. *Missouri*, 107 U. S. 233; *Memphis* v. *United States*, 97 U. S. 293; *Seibert* v. *Lewis*, 122 U. S. 284, 294; *Butz* v. *City of Muscatine*, 8 Wall. 575; *Mobile* v. *Watson*, 116 U. S. 305; *Curran* v. *State of Arkansas*, 15 How. 319.

In the case last cited, it was said by the court that "it by no means follows, because a law affects only the remedy, that it does not impair the obligation of the contract. The obligation of a contract, in the sense in which those words are used in the constitution, is that duty of performing it, which is recognized and enforced by the laws. And if the law is so changed that the means of legally enforcing this duty are materially impaired, the obligation of contract no longer remains the same."

It is however argued in support of the statute before us, that it violates no constitutional provision, and several decisions are cited in support of the plaintiff's position.

The principal one is that of *Von Baumbach* v. *Bade*, 9 Wis. 559, where the court held that a general statute permitting defendants in actions to foreclose mortgages to have six months to file answers, and requiring six months' notice before sale on decree, was valid even as to pending actions, although under former practice the defendant had but twenty days. The court, notwithstanding, admitted the correctness of the doctrine laid down by the supreme court in *Bronson* v. *Kinzie*, *McCracken* v. *Hayward*, and *Curran* v. *State of Arkansas*, but said that the case did not come within either of those decisions; that the remedy of the mortgagee, as it previously existed was in all its parts substantially continued, and that no new conditions were ingrafted upon it. "A complete and substantial remedy was left them," remark the court in conclusion, "according to the course of justice, as it was administered before its passage, the only difference being that it was less expeditious, but not so much so as materially to affect or diminish their rights."

*Hollway* v. *Sherman*, 12 Iowa, 282, is also cited. This was a case where the statute, regulating the foreclosure of mortgages by proceedings in equity, gave the defendant nine months additional in which to file an answer. The court admitted that it was unable to fix with precision the dividing line between acts strictly remedial, and those impairing the obligation of contracts, and held the law valid inasmuch as it "simply gave to the defendant an enlarged time for answering, leaving the remedy of the plaintiff in all other respects just as it existed under the previous law."

Nor does the case of *Bridgeport Savings Bank* v. *Eldridge*, 28 Conn. 556, to which our attention has also been called, militate against the doctrine enunciated in the decisions of the United States supreme court before cited. It was a case where a second mortgagee had acquired by foreclosure the right of redemption after the time allowed to redeem had expired under a decree of foreclosure; it was simply a question whether sufficient ground

was shown for opening a decree of the court of equity, and whether a court of equity possesses the power of reopening a decree of foreclosure and extending the time of redemption. The court there say,—that this power is inherent in the court that made the decree, is too well settled to need citation of authorities.

It will be noticed that in these decisions the foreclosure was under proceedings in equity where the court of chancery was authorized to decree foreclosure,—a proceeding which has never existed in this state. *K. & P. R. R. Co.* v. *P. & K. R. R. Co.*, 59 Maine, 31. As we have remarked, foreclosure in one of the modes provided by law is fixed by positive statute enactments, and does not depend upon any decree of the chancellor. It is not subject to that decree of flexibility, both as to time and process, which exists in those jurisdictions where foreclosure proceedings are relegated to courts of equity. The remedies there are more elastic than under a system where the time of redemption is known and understood to be for a fixed and definite term. So long as we maintain that the remedy, furnished by the laws at the time the contract is entered into, constitutes a part of the obligation (*Walker* v. *Whitehead*, 16 Wall. 314) so long must we see that it is not materially impaired by any disguise of remedial legislation. The doctrine of remedy must not affect the doctrine of rights. The latter is superior to the former, and guaranteed not only by the federal but every state constitution.

While we admit the difficulty, in some cases, of determining whether the change in the remedy has thus materially impaired the rights and interest of the creditor, we do not think any such difficulty exists in this case. The act in question abrogates a right which the defendant had as mortgagee, at the time the mortgage was given, of a fixed and definite period for the foreclosure of the mortgagor's equity. By this act, that which was before certain is rendered uncertain. It expressly provides that pending proceedings between the mortgagor and any of his creditors who may have a claim against him, and who may see fit to enforce it by attachment and subsequent bill in equity, the right of redemption shall not expire by any attempted foreclosure

of such mortgage. Litigation upon such a claim may be protracted for months or even years. If the claim is a valid one, then an equitable interest is conferred upon one, other than the mortgagor, with rights against the mortgagee of paying such damages as a court of equity may assess, and fulfilling requirements which, as in this case, by the terms of the mortgage contract devolved upon the mortgagor to fulfill personally. *Bryant* v. *Erskine*, 55 Maine, 156 ; *Eastman* v. *Batchelder*, 36 N. H. 141, 149 ; *Clinton* v. *Fly*, 10 Maine, 296. The right of redemption and the time for foreclosure may thus be so prolonged as materially to diminish the security of the mortgagee, notwithstanding he may be allowed possession of the premises. The rights conferred upon the judgment creditor are directly in conflict with the rights of the mortgagee acquired when the mortgage was made.

"If such rights may be added to the original contract by subsequent legislation," said the court in *Bronson* v. *Kinzie, supra*, "it would be difficult to say at what point they must stop."

The conclusion to which we have arrived in reference to this statute, as applied to pre-existing contracts, renders any further consideration of the case unnecessary.

*Demurrer sustained.*

Peters, C. J., Danforth, Libbey, Emery and Haskell, JJ., concurred.